**WOOD et al. v. PHILLIPS, Trustee, et al.**

No. 14102—Opinion Filed Sept. 18, 1923.

Rehearing Denied Oct. 30, 1923.

(Syllabus.)

1. **Counties—Action on Claims—Right of Taxpayers to Defend.**

A timely motion of taxpayers of a county to be made parties and defend a suit brought against the board of county commissioners on alleged invalid claims, should be sustained, and the taxpayers permitted to file proper pleadings to test the legality of the claims sued on.

2. **Same — Dereliction of Commissioners in Defense.**

The failure of the board of county commissioners to file proper pleadings and make a defense in good faith against claims in excess of the estimate made and approved for such purposes, and in excess of the tax levy for such purposes for such fiscal year, constitutes a fraud upon the county and its taxpayers they represent.

3. **Same—Claims in Excess of Legal Limit.**

The law of this state is plain that no claim arising by contract is valid against

a municipality where at the time it was contracted the estimate for such purpose was exhausted or insufficient to pay the same, but the officers are liable personally therefor. The board of county commissioners issue warrants on the county treasury for claims contracted within the approved estimate. To expend the approved estimate, which may have required the maximum tax levy permitted by law, and validate all other contracted indebtedness by judgment is to strike down in practice the constitutional and statutory safeguards as the rates of tax levy. Under such conditions, it is the duty of the trial courts to see that no judgment is ever entered without the county being properly defended against the illegality thereof.

**4. Same—Refusal to Permit Taxpayers to Defend—Reversal.**

Record examined, and held, that the action of the trial court in denying the motion of the taxpayers to be made parties in this case, with the right to plead and defend, constitutes reversible error.

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by G. O. Phillips, trustee, against the Board of Commissioners of Coal County. Petition of J. R. Wood and others, as taxpayers, to intervene and defend denied, and they bring error. Reversed.

Trice & Davison, for plaintiffs in error.

E. N. Holland, and Wylie Snow, Asst. Co. Atty., for defendants in error.

BRANSON, J. This suit was brought in the district court of Coal county by G. O. Phillips, trustee, as plaintiff, against the board of county commissioners of Coal county, Okla., as defendants. The plaintiff pleaded in his petition the following facts, in substance:

That the defendants were the duly elected, qualified, and acting county commissioners of Coal county, and that he, the plaintiff, brought this suit as trustee for an agreed number of persons whose names would more particularly appear in the exhibit attached to the petition, and that the defendants were duly and justly indebted to the plaintiff as trustee for various persons, firms, and corporations upon account for material, supplies, service, and labor furnished, done, and performed for the defendants, in the due administration of the affairs of Coal county, in the sum sued for. That an itemized statement of the various claims so assigned to the plaintiff as the trustee was attached as an exhibit to the petition by giving the names of the claimants, the number of the claim, and the amount thereof, the whole number of claims amounting in the aggregate to $66,-582.16, for which amount the plaintiff prayed judgment.

This petition was filed on November 17, 1922, and thereafter the defendant, the board of county commissioners, filed an answer, which is, omitting the formal parts, in words and figures as follows, to wit:

"They deny each and every material allegation contained in plaintiff's petition, except such as are herein specifically admitted, and demand strict proof of the same. Wherefore, having fully answered, defendants ask that they go hence without day, that they recover thereof costs herein expended."

This answer was filed December 12, 1922. On the 24th day of November, 1922, certain taxpayers, to wit, J. R. Wood, C. M. Threadgill, Dan McLaughlin. Isaac Vogel. and Mike Mayer, filed a motion in said cause to be allowed to intervene, plead, and defend said action. The motion of the taxpayers for leave to intervene was denied by the court, and demurrer to the petition which they sought to file was stricken from the files by the trial court, and on the same date the defendant filed its answer, to wit, December 12th, the cause came on for trial before the district court, and the taxpayers sought permission of the court to appear and interrogate the witnesses in defense, as against the plaintiff's claim, all of which the trial court denied.

Testimony was thereupon taken, and the following evidence, in substance, was adduced:

One M. R. H. Taylor was produced on behalf of the plaintiff, who testified, in substance, that he was a member of the board of county commissioners of Coal county; that he had examined the claims sued on by the plaintiff, that the same constituted a just indebtedness of Coal county, that the county owed the same, and that the claims were not paid by the board of county commissioners because of "insufficient funds."

The next witness introduced by the plaintiff was one John Ward, who testified that he was a member of the board of county commissioners of Coal county, and was chairman of the board, that he was acquainted with the claims sued on by the plaintiff, that each of the claims sued on by the plaintiff had been brought before the board of county commissioners, and that they were not paid "because did not have any funds to pay them with"—did not have any available cash to pay them with.

The next witness introduced by plaintiff was W. W. Barnett, who testified he was a member of the board of county commissioners of Coal county, that he had seen the claims sued on by the plaintiff, that he was familiar with them, and that they had not been paid by the board because there were "no funds." At this juncture, the entire membership of the defendant board of county commissioners having been used by the plaintiff and in his behalf and to establish his claim, the taxpayers then in open court requested of the court permission to cross-examine the witnesses as to the claims sued on by the plaintiff, which request was again by the trial court denied the taxpayers. At the close of the testimony the trial court promptly entered judgment for the plaintiff for the amount claimed in the petition, as amended, to wit, $67,565.37, to which attorneys for the taxpayers, who were present in court, asked leave to file an exception, which was denied by the trial court.

After the rendition of this judgment the taxpayers filed a motion for new trial, which was stricken from the files, by order of the trial court, and from this action and the orders denying the right of the taxpayers to intervene they perfect the appeal to this court, attaching to their petition in error a copy of the entire record in the case.

They assign as. error that the court erred in overruling the plaintiffs in error's motion to be made parties defendant in said cause, and that the court erred in striking the plaintiffs in error's motion to make more definite and certain; the court erred in overruling plaintiffs in error's motion for new trial, and that the judgment of the court is contrary to law; and for said reasons pray a reversal of said cause by this court.

Under the record as it appears in this court, the action of the board of county commissioners in this case is nothing less than a legal fraud against the county of which they were officers. Each of the commissioners, when taking the witness stand for the plaintiff, concluded his testimony by stating, in substance, that the claims had not been paid by the board of county commissioners because the board had no funds or no available cash with which to pay them. The board of county commissioners, under the fiscal system of this state, never has any cash, and the board is not called upon and is not permitted as a matter of law at any time to have available cash to pay any claim. All legal claims are ultimately paid by the county

treasurer of the county, who is the custodian of the county's funds of each and every character. When the estimate, for any legitimate purpose, is approved by the excise board of the county, and the tax levy made for the fiscal year intended, the board of county commissioners, in the exercise of their contractual authority, as distinguished from the payment of claims arising by operation of law, have power to bind the county to the extent of the estimate made and approved for the specific purposes mentioned in the budget, and to no greater extent.

If the county commissioners. as witnesses for the plaintiff as against the municipality they represent, meant by saying that the claims were not paid because there was no available cash with which to pay the same, that the estimate for the current fiscal year for paying claims of the character sued on, if such had ever been allowed, had been exhausted, and they were, therefore, without authority to issue a warrant on the county treasury in satisfaction of such claims, then such claims had no standing or validity as against their municiplity, but were wholly illegal and void. That is to say, if the indebtedness as said claims represented were contracted without any estimate approved and tax levy for such purpose, or were made after the estimate had been exhausted, they were wholly illegal and would not furnish a basis for any judgment against the board of county commissioners of Coal county, —the corporate name in which the county itself can sue or be sued.

From the record, it would appear that this is the only reasonable inference that could be drawn. Under this state of facts, it not only should have appealed to the discretion of the trial court to allow the taxpayers to be made parties defendant, but they had such interest in the effort of the plaintiff to secure a judgment against said county, based upon illegal claims, as entitled them to be made parties to this suit, under authority of the case of Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389.

It was the duty of the board of county commissioners in this action to have contested the suit of the plaintiff in good faith, and if the claims sued. on by the plaintiff grew out of contracts, express or implied, made after the estimate for the current fiscal year for such purpose had been exhausted, it was the duty of such board to plead the facts, and show such facts to the trial court in good faith. This

no doubt was the purpose and intention of the taxpayers to do, if they had been permitted to intervene, plead, and be heard in the trial. The failure of the board of county commissioners to perform its duty as required by law, and the action of the trial court in denying the application of the taxpayers to be made parties defendant for the purpose of contesting claims which from the method used to attempt collection strongly indicate to have been without the pale and sanction of legal authority, and no claim in law as against the county, resulted in a judgment in favor of the plaintiff, without any one to defend as against the same the interest of the county and its taxpayers. If a judgment based upon such a proceeding could have any sanction in the law of the state in financing a county or any other municipality of the state, it would indeed operate to nullify the tax limitation provisions of the Constitution and the statutes. Throughout the Constitution and the statutes of this state are limitations on the rate of taxation that can be levied for specific purposes. If the amount to be raised by such constitutional or statutory rate can be exhausted and then claims or indebtedness contractual in their nature, can be made by administrative officers of the municipality which are legal and binding and which can be reduced to a judgment and then funded or collected against the county, the limitation provisions on the rate of taxation can have no controlling or effective force, and the amount of taxation during any current fiscal year, as in the case at bar, could be increased at the discretion of the officers in charge of the county affairs. If indeed such contracts can be made, after the funds provided for such purposes are exhausted, which would bind the county in the sum of sixty odd thousand dollars, the county commissioners could have with equal legal force entered into contracts binding upon the county in an equal number of millions of dollars, which would operate to confiscate all of the private property in the county they represent.

When such a condition as is here presented by the record is brought before the trial courts of this state, it is their duty to see that the interests of the county are properly protected, either by a defense in good faith interposed by the officers of the law, or that taxpayers who intervene develop all the facts, and that no judgment be entered against a county as here, tainted with such connivance and legal fraud as is here apparent from the reading of the record in this case.

The plaintiffs in error contend, and as to this contention we fully concur, that it was the duty of the board of county commissioners to see that no such claims as the ones here sued on should ever be incurred, except within the approved estimate for which the tax levy has been made, and when all such claims are so confined, upon their approval, the board of county commissioners can issue warrants on the county treasury of the county therefor, and if the claims in question did not fall within the estimate and the tax levy for the current fiscal year in which incurred, there was no liability as against the county, and it is a fraud upon the municipality and the taxpayers thereof.

The above conclusions are inevitable by reason of section 26, art. 10, of the Constitution of the state, and by reason of section 1615, Rev. Laws 1910, as amended by section 9, chap. 80, Session Laws of 1911, which provides:

"It shall be unlawful for the board of county commissioners, the city council or the commissioners of any city, the trustees of any town, board of education, township board, school district board, or any member or members of the aforesaid commissioners, or any of the above named boards, to make any contract for, incur, acknowledge, approve, allow, or authorize any indebtedness against their respective municipality or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose, for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue. Any such indebtedness, contracts incurred, acknowledged, approved, allowed, or authorized in excess of the estimate made and approved for such purposes for such current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue. shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed, or authorized or attested the evidence of said indebtedness, but may be collected by civil action from any official contracting incurring, acknowledging, approving or authorizing or attesting such indebtedness, or from his bondsmen."

But for the fact that it might be possible on a full and complete trial of this cause upon issues joined in good faith by the taxpayers that some of the claims sued on by the plaintiff might find sanction in law, this case should be reversed, with directions to dismiss plaintiff's petition. The record fails to disclose whether at the time any of the claims were incurred there was sufficient amount of the estimate made and approved for that purpose to pay the

claim which would make the claim legal, but the estimate thereafter had been exhausted by claims paid out of the same.

For this reason, this cause is reversed, with directions to the trial court to allow the taxpayers to intervene and file any pleadings necessary for a proper and legal defense to the plaintiff's petition, and for such further proceedings herein not inconsistent herewith.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER. and COCHRAN, JJ., concur.